661 So.2d 1190 (1995)
SANTA ROSA COUNTY, Florida, Petitioner,
v.
ADMINISTRATION COMMISSION, DIVISION OF ADMINISTRATIVE HEARINGS, et al., Respondents.
No. 84545.
Supreme Court of Florida.
July 13, 1995.
Rehearing Denied October 12, 1995.
*1191 Kenneth G. Oertel and M. Christopher Bryant of Oertel, Hoffman, Fernandez & Cole, P.A., Tallahassee; and Thomas V. Dannheisser, County Attorney, Santa Rosa County, Milton, for Petitioner.
David L. Jordan, Deputy General Counsel; Stephanie M. Callahan, Assistant General Counsel and Dan Stengle, General Counsel, Department of Community Affairs, Tallahassee, for Respondents.
PER CURIAM.
We have for review Santa Rosa County v. Administration Commission, Division of Administrative Hearings, 642 So.2d 618 (Fla. 1st DCA 1994), in which the First District certified the following question:
DOES A COUNTY HAVE STANDING TO CHALLENGE BY A DECLARATORY ACTION THE CONSTITUTIONALITY OF A STATUTE OR RULE WHICH INDIRECTLY REQUIRES THE COUNTY TO EXPEND PUBLIC FUNDS IN ORDER TO COMPLY WITH THE MANDATES OF SUCH STATUTE OR RULE, AND FURTHER PROVIDES FOR A POTENTIAL LOSS OF REVENUE TO THE COUNTY IN THE EVENT OF NONCOMPLIANCE?
Id. at 624. We have jurisdiction pursuant to article V, section 3(b)(4), of the Florida Constitution.

Facts and Proceedings Below
On April 2, 1990, pursuant to section 163.3161, Florida Statutes (1989), Santa Rosa County submitted a proposed comprehensive plan to the Department of Community Affairs (DCA) for written comment. The DCA provided the county with its objections, recommendations, and comments regarding the county's comprehensive plan. Subsequently, by ordinance, the county adopted its comprehensive plan. In response, the DCA issued its "Statement of Intent to Find the Comprehensive Plan Not in Compliance" with Florida Administrative Code Rule 9J-5, and chapter 163, Florida Statutes. The DCA then filed a petition with the Division of Administrative Hearings (DOAH) for a determination that the county's comprehensive plan did not comply with chapter 163.
Almost a year later, the county filed a complaint for declaratory and injunctive relief in Santa Rosa County Circuit Court against the DCA, DOAH, and Don W. Davis in his capacity as hearing officer of DOAH. In its complaint, the county sought a declaration as to the constitutionality of the statutes *1192 and rules being applied in the administrative comprehensive plan case. The lawsuit was later moved to the circuit court in Leon County.
In June of 1992, the parties, in the context of the pending DOAH action, signed a stipulated settlement agreement in which the county agreed to adopt a remedial plan in compliance with the provisions of the Growth Management Act.[1] In September of 1992, the DCA filed a motion for summary judgment in the circuit court action. The DCA alleged that the parties had settled the administrative litigation concerning the county's compliance with the comprehensive plan and that the civil suit was thus moot, as Santa Rosa County had no present need for a declaratory judgment. The trial court granted the motion and ordered summary judgment in favor of the DCA.
The county subsequently filed a motion for rehearing which alleged that it still needed a declaration because it would be exposed to future problems in complying with chapter 163 and rule 9J-5. In the order denying the county's motion for rehearing, the trial court explained:
The Settlement Agreement resolved the dispute between the parties as to the particular facts alleged in the complaint. This court granted Summary Judgment on the grounds that the requested declaration no longer presented an actual controversy as to the state of facts nor was there a bona fide, present need for the declaration for the reason that Santa Rosa County was no longer subject to sanctions.
Santa Rosa County appealed the summary judgment to the First District. In its opinion, the First District agreed with the county that its challenge was not moot; however, the court affirmed the summary judgment based on the county's lack of standing. Santa Rosa County, 642 So.2d at 623.

Analysis
We disagree with the First District's conclusion that declaratory relief was still available after settlement of the parties' dispute. Based on our review of the record and the settlement agreement, we find that all disputes between the parties were resolved by the stipulated settlement agreement, which was signed by the county and the DCA in June of 1992. Therefore, because there was no pending controversy, the Declaratory Judgment Act was no longer available to Santa Rosa County.[2]
The purpose of a declaratory judgment is to afford parties relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations. Martinez v. Scanlan, 582 So.2d 1167, 1170 (Fla. 1991). Parties who seek declaratory relief must show that
there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or *1193 persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity. These elements are necessary in order to maintain the status of the proceeding as being judicial in nature and therefore within the constitutional powers of the courts.

Id. (alteration in original) (quoting May v. Holley, 59 So.2d 636, 639 (Fla. 1952)). Thus, absent a bona fide need for a declaration based on present, ascertainable facts, the circuit court lacks jurisdiction to render declaratory relief. Martinez, 582 So.2d at 1170 (citing Ervin v. Taylor, 66 So.2d 816 (Fla. 1953)).
Additionally, it is well settled that, "Florida courts will not render, in the form of a declaratory judgment, what amounts to an advisory opinion at the instance of parties who show merely the possibility of legal injury on the basis of a hypothetical `state of facts which have not arisen' and are only `contingent, uncertain, [and] rest in the future.'" LaBella v. Food Fair, Inc., 406 So.2d 1216, 1217 (Fla. 3d DCA 1981) (quoting Williams v. Howard, 329 So.2d 277, 283 (Fla. 1976)); see also American Indemnity Co. v. Southern Credit Acceptance, Inc., 147 So.2d 10, 11 (Fla. 3d DCA 1962) (holding that, in a declaratory action case, "courts may not be required to answer a hypothetical question or one based upon events which may or may not occur").
In light of these legal principles, we find that in the instant case the stipulated settlement agreement resolved the dispute between Santa Rosa County and the DCA. With the addition of the remedial plan amendments, the county agreed to bring their comprehensive plan into compliance with chapter 163, Florida Statutes, and rule 9J-5, Florida Administrative Code. Consequently, there was no longer a bona fide, actual, or present need for a declaration as to the constitutionality of those statutes or rules being applied to the county. Therefore, the circuit court lacked jurisdiction to grant declaratory and injunctive relief.
Accordingly, because we find that all issues between the parties were rendered moot, we approve the result of the district court's decision but disapprove its opinion to the extent of conflict herewith and express no opinion on the certified question.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] In pertinent part, the agreement provided:

18. Adoption or Approval of Remedial Plan Amendments. Within 60 days after receipt of the Department's objections, recommendations, and comments, the local government shall consider for adoption all remedial plan amendments and amendments to the support document, and deliver the amendments and a transmittal letter to the Department as provided by law. The letter shall describe the remedial action adopted for each part of the plan amended, including references to specific portions and pages.
....
20. Review of Remedial Amendments and Notice of Intent. Within 45 days after receipt of the adopted remedial plan amendments and support documents, the Department shall issue a notice of intent pursuant to Section 163.3184, Florida Statutes, for the adopted amendments in accordance with this agreement.
....
b. Not in Compliance: If the remedial actions are not adopted, or if they do not satisfy this agreement, the Department shall issue a notice of intent to find the plan amendments not in compliance and shall forward the notice to DOAH for a hearing as provided in subsection 163.2184(10), the Florida Statutes, and may request that the matter be consolidated with the pending proceeding for a single, final hearing. The parties hereby stipulate to that consolidation and to the setting of a single final hearing if the Department so requests.
[2] See § 86.011, Fla. Stat. (1993).